## LIPPMAN v. ÆTNA INSURANCE COMPANY.

1. Answers to suits in the city court of Savannah must be filed on or before the first day of the return term.
2. Where a demurrer and answer to a petition are filed too late, but, instead of moving to strike because not filed in time, the plaintiff invokes the judgment of the court on the demurrer and amends the petition to conform to its judgment, it is too late at a subsequent term of the court to move to strike the demurrer and answer because not filed in time.
3. A material amendment to a petition opens the case, if in default, for answer by the defendant.
4. A forfeiture of a contract of insurance can not be waived by a local agent of an insurance company, without express authority from the governing officials of the insurance company.

Argued April 12, — Decided May 14, 1904.

Action on insurance policy.    Before Judge Norwood.    City court of Savannah.    December 7, 1903.

*Saussy & Saussy*, for plaintiff.
*Adams & Adams*, for defendant.

EVANS, J. Mrs. Emma Lippman filed her suit against the Ætna Insurance Company of Hartford, Conn., returnable to the May term, 1902, of the city court of Savannah.    The first day of the May term was the fifth day of the month, and on that day counsel for the defendant had their names marked on the judge's docket as attorneys for the defendant, and on the following Monday, which was the second Monday of the term, filed its demurrer and plea under the rules of the court.    The grounds of the demurrer were, (1) that no copy of the contract of insurance sued on was incorporated in or attached to the petition, nor did the petition purport to set forth a copy of what appears written or printed upon the face or in the body of the policy sued on; (2) that paragraph 8 of the petition failed to state wherein the defendant had acted in bad faith or had been stubbornly litigious so as to be responsible for counsel fees.    Nothing further was done in the case until April 18, 1903, when the demurrer was heard and sustained, and plaintiff allowed ten days to file an amendment containing or having attached thereto a copy of everything appearing on the face or in the body of the policy, including all the stipulations embraced in that portion of the same above the signatures of the company's officers by whom it was executed.    On April 22, 1903,

plaintiff complied with the terms of the order sustaining the demurrer, and amended her petition by attaching a copy of the policy of insurance.    Whereupon, on May 4, 1903, the defendent amended its original plea, denying liability to the plaintiff, because, in and by its policy of insurance, it was stipulated that, unless otherwise provided by agreement indorsed thereon or added thereto, the same should be void if the insured, at the time of effecting the insurance, had or should thereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by said policy; that when the policy was taken out, the insured had two policies of insurance on the said property, one in favor of the Hartford Fire Insurance Company issued Nov. 17, 1899, for twenty-five hundred dollars, and another in favor of the Liverpool, London & Globe Insurance Company issued on the said Nov. 17, 1899, for one thousand dollars; that no agreement was indorsed on the policy or added thereto as to the said previous insurance, which existed on the said property at the time of the fire; and that, by reason thereof, the covenants and conditions of this policy of insurance were and are broken, and the plaintiff is not entitled to recover any sum whatever.    On December 7, 1903, by her written motion previously filed on August 26, 1903, plaintiff moved to strike defendant's demurrer, plea, and answer, and to enter up a default in the case nunc pro tunc on the grounds, (1) that the plaintiff filed her petition against the defendant, and the same was duly served, returnable to the May term, 1902, of the court; that the first day of the May term, 1902, of the court was May 5th of said year, and on said day the defendant was not represented by counsel nor had it filed any demurrer, plea, or answer to the petition; that afterwards defendant employed counsel, who on May 12, 1902, filed a demurrer, plea, and answer, but that the employment of counsel and the filing of the said demurrer, plea, and answer were too late, as the city court of Savannah under its constitution is a court in which cases are triable at the first term, and all pleadings and defenses and entries of appearance are required by law to be made on the first day of the term, and upon failure thereof default should be entered; (2) that defendant did not employ the counsel whose names are entered on the docket, and who filed said defense, until after the first day of the term had passed, which fact was unknown to plaintiff until the present

term of the court and within the last few days.  The judge heard
evidence on the issues of fact raised by this motion to strike.  The
evidence submitted was sufficient to sustain the finding that coun-
sel was employed on the first day of the term and had authority
to appear on that day and make answer for the company.  The
motion was overruled, and the case proceeded to trial.  Error is
assigned on the judgment refusing to sustain plaintiff's motion to
strike the company's defenses.

1. The law applicable to the filing of answers in the city court
(Code of 1882, § 4926) provides that "The defendant shall file
his answer in writing, on or before the opening of the court, at
the return term of the suit, and the pleadings shall conform to the
general law of the State.  In case of default, the same shall be
noted on the docket; and in such case the plaintiff shall be enti-
tled to proceed ex parte and establish his demand, upon proof
thereof, at such return term."  It is further provided, in the Code
of 1882, § 4983, that: "The judge of said court may make rules
of practice for the same, not in conflict with the general laws of
the State; and, in all cases of fees to officers where such general
laws do not strictly apply, he may, by rule or order of court, fix
such fees by analogy to the general law."  The following rules of
practice were adopted by the court at the February term, 1899,
on the authority of the last-quoted section: "On the first day of
the term the entire docket will be called.  Cases in which no ap-
pearance is made shall be in default and so marked, and plaintiffs
shall be at liberty to proceed ex parte after the first day if no ap-
pearance has been entered or answer filed during the first day."
"Except new cases and those assigned under Rule Three, all cases
called on the first day shall be subject to assignment for trial."
"New cases shall be called for assignment on the second Monday
of the term, and defendants shall have until such call to file an-
swer in all cases where an appearance has been entered during the
first day of the term."  Plaintiff in error maintains that the rule
promulgated by the judge, providing the time the answer may be
filed, is void because it is inconsistent with the Code of 1882,
§ 4926, and the general law on the subject.  Section 4926 of the
Code is mandatory that a written answer shall be filed on or before
the opening of the court at the return term of the suit.  It would
be an unwarranted construction to extend the meaning of the

words, " opening of the court," to include any other day except the first day of the term. If the plea could be filed after the first day of the term, it could be filed on the last day as well as on any intermediate day. To give any other construction to this statute would be to deprive it of a definite meaning in this regard. A failure to file the answer on the first day of the term would entitle the plaintiff to have the case noted on the docket as in default, and to proceed ex parte as provided by this section. Apparently recognizing the validity of the rules of practice prepared by the bar and promulgated by the judge, the plaintiff, without urging any objection that the demurrer and answer were filed too late, went to trial on the demurrer, and amended her petition to conform to the judgment on the demurrer. When the case was up for a hearing on the demurrer, the plaintiff ought to have urged her motion to strike the demurrer and plea because they were filed too late. Instead of taking advantage of defendant's failure to answer on the first day of the term, she invoked a ruling of the court on the merits of the demurrer, and complied with the terms of the judgment sustaining the demurrer, and allowed several months to pass before filing a motion to strike the company's defense and declare a default. The plaintiff will be presumed from her conduct to have waived her right to insist upon her motion at such a late day. *Pedrick* v. *McCall*, 80 *Ga.* 491; *Cook* v. *Childers*, 94 *Ga.* 718.

2. It was further contended that the amendment was material and the allowance of the same opened the default, if any existed. The entire policy was added to the petition by amendment. The policy embraced many stipulations in the body of it above the signatures of the company's officers. These stipulations were not set out in the declaration. " While it was not essential to the validity of an action upon an insurance policy . . to set out or attach a full copy of all which was written or printed upon such policy, the declaration ought to have contained or had attached thereto a copy of everything appearing upon the face and in the body of the policy, including all the stipulations embraced in that portion of the same above the signatures of the company's officers by whom it was executed." *Southern Mutual Ins. Co.* v. *Turnley*, 100 *Ga.* 296 (2). Some of these stipulations provided for compliance with conditions precedent to bringing suit. · The

amendment was of a substantial character; it gave a new phase to the case, and was of such materiality that its allowance permitted the filing of a plea to the matter alleged by way of amendment. Considering the case as in default, the allowance of a material amendment opens the case for answer by defendant. *Calhoun* v. *Mosley*, 114 *Ga*. 641. The court therefore properly overruled the motion to strike the pleadings of the defendant and enter judgment as in case of default.

3. The evidence on the main trial was substantially as folows: The policy of insurance was issued to Lewis Lippman on February 27, 1901. Among other stipulations in the body of the policy was the following: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." On October 22, 1901, Lippman assigned his interest in the policy to his wife, Mrs. Emma Lippman, the company consenting to this transfer. On December 23, 1901, a fire occurred on the premises described in the policy, and considerable property belonging to Mrs. Lippman was destroyed. Proofs of loss were submitted to the insurance company on January 10, 1902. These proofs of loss, which were signed by Mrs. Lippman, contained the following statement: "At the time of the fire . . there was outstanding against said property insurance under the following companies, . . to wit: The Liverpool, London & Globe Insurance Company of Liverpool, England, Policy Number 5892, $1,000.00, issued November 17, 1899; Hartford Fire Insurance Company of Hartford, Conn., Policy Number 8201, $2,500.00, issued November 17, 1899; The Citizens Insurance Company of Missouri, Policy Number 186,777, $2,500.00, issued June 14, 1901. All of said companies are represented by agents in the city of Savannah, Ga." The firm of W. L. Wilson & Co. represented the Ætna Insurance Co., and, acting in its behalf, sent to Mrs. Lippman a letter dated December 31, 1901, saying therein: "This is to advise you that the Ætna Insurance Co. of Hartford wishes to cancel its policy number 6304, covering on your furniture, etc., and that the said policy will be canceled under its terms and conditions on January 5, 1902, thus giving you five days in which to replace the same.

This cancellation is subject to the payment of any damage sustained by you by fire on Dec. 23, 1901, which has been appraised at $900.00 with total contributing of insurance of $7,500.0 ', making this Co.'s liability $180.00, which it stands ready to pay, making the return figure pro rata to you $1.63, which we will hand you on demand or on receipt of proper receipt which we will furnish you." The trial judge, on motion of the defendant, nonsuited the plaintiff. The motion for nonsuit was predicated on the ground that at the time the policy sued on was issued, there were two other policies on the same property, and one was issued thereafter ; and that there was no proof of the company's assent to this additional insurance. The plaintiff contended in the court below, and contends here, that the evidence showed a waiver of the forfeiture resulting from the additional insurance without the company's assent. The evidence of waiver relied on was the letter from W. L. Wilson & Co. to Mrs. Emma Lippman, dated December 31st, 1901, appearing in the foregoing synopsis of the evidence. The forfeiture had already occurred when this letter was written ; the policy by its own terms was void. In *Graham* v. *Niagara Fire Ins. Co.*, 106 *Ga.* 840, it was questioned whether, by the most formal acts of the governing body of the corporation, a waiver of a forfeiture completely divesting all contractual liability would be binding on the company. Certainly it can be said that a local agent, whose authority is to receive proposals for insurance and to make insurance by policies signed by the president and secretary of the insurance company and countersigned by himself as local agent, has no power to waive a forfeiture. *Graham* v. *Ins. Co.*, supra; *Underwriters' Agency* v. *Sutherlin,* 55 *Ga.* 266; *Farmers Mutual Ins. Ass'n* v. *Price,* 112 *Ga.* 267; *Lippman* v. *Ætna Ins. Co.*, 108 *Ga.* 391. When there is a forfeiture, the contract of insurance is at an end, and to revive it would require express authority from the company. The letter was in the nature of an offer of compromise. Treating it as an express recognition of the company's liability for a certain amount and of the binding force of the policy at that time, it can not bind the company unless the agent had authority to make such admissions and to waive the forfeiture so as to restore validity to the insurance contract. It does not appear that he had such authority. The burden is on the plaintiff, when he relies

on the act of an agent to bind the principal, to show the agent's authority. The contract of insurance having been invalidated by taking concurrent insurance without permission, and the agent having no authority to waive this provision of the policy, the judgment awarding the nonsuit was right.

*Judgment affirmed. All the Justices concur.*